IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,
          Plaintiff,

vs.                            Case No.:  23-Cr-20483-RKA

AVIN SEETARAM,
              Defendant.
_____/

**OMNIBUS MOTION TO SUPPRESS PRE-ARREST/CUSTODIAL STATEMENTS, DEBRIEFING/PROFFER STATEMENTS, AND GRAND JURY TESTIMONY**

COMES NOW the Defendant, AVIN SEETARAM, by and through undersigned counsel, pursuant Federal Rule of Criminal Procedure 11(f) and 12(b)(3)(C), the Fifth and Sixth Amendments to the United States Constitution, and Federal Rule of Evidence 410 respectfully moves this Court to suppress three distinct categories of statements: (1) statements elicited before, during, and after custodial transport on November 18 and November 21, 2023; (2) statements made during debriefing/proffer sessions with the United States Attorney's Office on December 11, December 15, and December 22, 2023; and (3) testimony given before the federal grand jury on December 13, 2023. Each category is governed by different constitutional and evidentiary rules; the sections below make clear which arguments apply to which statements.

## PROCEDURAL HISTORY

1.      On November 21, 2023, the FBI arrested Mr. Seetaram on allegations related to a conspiracy to commit murder-for-hire.

2.      In the days surrounding that arrest and in December 2023, Mr. Seetaram provided multiple statements in different settings: (a) pre-arrest/custodial encounters and transport; (b) debriefings with the United States Attorney's Office at the Wilkie D. Ferguson Courthouse; and (c) testimony before the federal grand jury.

## FACTUAL BACKGROUND

### A. Pre-Arrest and Custodial Statements

3.      On November 18, 2023, an FBI Agent made a recorded phone call to Mr. Seetaram in an effort to get Mr. Seetaram into their office, get a statement from him and polygraph him.  During the recorded phone call, the FBI asked for Mr. Seetaram to come in that same day for an interview on multiple occasions.  When Mr. Seetaram advises them he can come in at 3:00 p.m.,  the FBI Agent requests him to come in sooner.  When asked, the FBI Agent told Mr. Seetaram the interview would take under an hour.  After that phone call, on November 18, 2023, Mr. Seetaram appeared at the FBI's Miramar office at approximately 12:30 p.m. Although originally told the interview would last

under an hour, the interrogation lasted between five and seven hours in a closed setting with at least three FBI agents. Under the totality of circumstances, a reasonable person would not have felt free to leave, making this custodial in nature. In fact, the FBI Agent who records the interview notes that this is a custodial interview at the outset of the interview. *Miranda* warnings were not administered until several hours after the interrogation began and before the administering of the polygraph examination, rendering the statements made by Mr. Seetaram on November 18, 2025 inadmissible.

4.     Later that same night, at approximately 11:30 p.m., six FBI agents appeared at Mr. Seetaram's home. They pressured him to place a controlled call and continued questioning him. Critically, the agents threatened that if he did not 'tell the truth,' he and his wife would be arrested, and that his children would have no parents. The agent reiterated your wife is going down with you if you lied towards the end of the conversation.   The combination of a prolonged custodial interrogation, late-night home intrusion, and explicit threats against his wife and children demonstrate that all of Mr. Seetaram's statements on November 18 were not voluntary.

5.     On November 21, 2023, Mr. Seetaram was taken into custody by the FBI, mere days after the threats by the agents to take him and his wife down. The interrogation began during the car ride to Snake Road and continued at

the FBI headquarters in Miramar, Florida. This was one continuous custodial episode. Throughout both the car ride and the FBI headquarters interview, Mr. Seetaram repeatedly asked variations of 'Am I going home tonight?' and 'I wanna go home.' These repeated inquiries were not idle wishes; taken together, they show that he understood he was in custody and not free to leave. For example, during the car ride, he pleaded, 'Come on man, I wanna go home.' Later, he reiterated, 'Shit, I wanna go home man.' At the FBI headquarters, he continued, asking, 'Man, I hope I get bonded out, you think so?'

6.     On November 21, 2023, at approximately 3:00 p.m., agents arrived at Mr. Seetaram's sister's house, woke him[1], displayed photographs (including of him and Christopher Singh purchasing a garbage can and driving a van on I-75 at the Everglades toll plaza), and told him he needed to accompany them to "refresh his memory."   When his father inquired about when Mr. Seetaram would be home, the agent told his father not to worry, that Mr. Seetaram would be "home for dinner." Mr. Seetaram asked his father to call a lawyer. Mr. Seetaram was placed in the back of an unmarked vehicle (one agent in back, two in front) and transported to Snake Road in the Everglades.

---

[1] Mr. Seetaram was asleep recovering from the flu and had taken Nyquil for his symptoms.

7.      On November 21, 2023, during the custodial car-ride interrogation, Mr. Seetaram made explicit acknowledgements that he was not going home stating "I don't get to go home with my kids." and "I'm not coming home tonight… I'm getting booked." and pleaded: "Come on man, I wanna go home."   Agents also gave equivocal responses that objectively would make an individual in Seetaram's position feel he is not free to leave:

Seetaram: "Am I gonna be going home today?"

Agent: "Um. We gotta talk to some people about it."

 Seetaram: "If you promise me I get to go home to my kids…"

Agent: "I can't promise you that, what did I tell you before, remember no promises?"

8.      When they arrived at Snake Road, agents showed him photos of a decomposed body while shouting accusations. There were more than a dozen FBI Agents at the scene.  Mr. Seetaram cried, stating, "I didn't kill him." He was then transported to the FBI office; questioning continued in the vehicle and again at the office. *Miranda* warnings were provided only after he was told he was under arrest.

9.      Later in the same interview, he repeated: "Shit, I wanna go home man."

He then asked about release again: "Man, I hope I get bonded out, you think so?"

10.     During the November 21, 2023, interrogation, agents made inducements directly tied to cooperation. They told him: "You have the possible benefit out there … if you lie, that possible benefit is gonna disappear," and assured him, "You've made the mountain into a speedbump."

11.     *Miranda* warnings were not provided until the end of the FBI headquarters interview, after substantial questioning and after incriminating admissions had already been elicited. This 'question-first, warn-later' approach is constitutionally defective under *Missouri v. Seibert*, 542 U.S. 600 (2004).

12.     Throughout the day, Mr. Seetaram repeatedly asked variations of the question, 'Am I going home tonight?' and 'I wanna go home.' At FBI headquarters, he continued this pattern, stating, for example, 'Man, I hope I get bonded out, you think so?' These statements underscore that his decision to speak was driven by his desire to be released and that an individual in his position would not feel free to leave.

## B. Debriefings / Proffer Sessions

13.     On December 11, 2023, at the Wilkie D. Ferguson Courthouse in Miami, Florida, agents met with Mr. Seetaram in the presence of the Assistant United States Attorney ("AUSA"). Defense counsel was present. Mr.

Seetaram was transported to a grand jury room at approximately 9:30 a.m., and the debrief proceeded under prosecutorial supervision.

14.     On December 15, 2023, at the same courthouse, a second debrief took place with the AUSA Waxman and defense counsel. Mr. Seetaram was transported to a grand jury room at approximately 9:40 a.m., and the debrief proceeded under prosecutorial supervision.

15.     On December 22, 2023, a third debrief took place in the grand jury room at the Wilkie D. Ferguson Courthouse. This session followed—and was part of—the same continuum of discussions initiated by the USAO with both the AUSA and defense counsel.

16.     These three debriefings proceeded without  a proffer/"Queen for a day" letters and there were no Rule 410 waivers.

## C. Grand Jury Testimony

17.     On December 13, 2023, Mr. Seetaram testified before the federal grand jury regarding alleged conduct and the involvement of others. He did so after being told by then-counsel this was the only way he could "get out of this problem," leaving him to believe he had no real choice but to testify.

18.     Mr. Seetaram was not subpoenaed to appear before the grand jury.

19.     At the outset of the grand jury proceeding, when advising Mr. Seetaram of his *Miranda* rights the prosecutor improperly narrowed the scope of the right to silence by conditioning it on whether a question "tended to incriminate" Mr. Seetaram.

20.     Additionally, during the *Miranda* advisement the prosecutor failed to inform Mr. Seetaram that he had the right to stop answering questions at any time during the proceeding.

## LEGAL STANDARD

Federal Rule of Evidence 410(a)(4) bars admission of "a statement made during plea discussions with an attorney for the prosecuting authority" if no guilty plea results or the plea is later withdrawn. The former Fifth Circuit's decision in *United States v. Robertson,* 582 F.2d 1356 (5th Cir. 1978) (*en banc*) (statements inadmissible if made in course of plea discussions absent express waiver) applies a two-part test: (1) whether the defendant had a subjective expectation to negotiate a plea, and (2) whether that expectation was objectively reasonable under the totality of the circumstances[2]. *See also United States v. Pielago,* 135 F.3d 703, 709–10 (11th Cir. 1998)  (ambiguous

---

[2] Decisions of the former Fifth Circuit handed down before October 1, 1981, are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*)

proffer terms construed in favor of defendant); *United States v. Mezzanatto,* 513 U.S. 196, 203–06, (1995) (Rule 410 protections may be waived, but only explicitly and voluntarily).

Custodial statements are inadmissible, absent *Miranda* warnings and a valid waiver. *See Miranda v. Arizona*, 384 U.S. 436 (1966)(requiring suspects be clearly informed of the unqualified right to remain silent and to counsel); *Rhode Island v. Innis,* 446 U.S. 291 (1980)(defining interrogation as words or actions reasonably likely to elicit an incriminating response); *Stansbury v. California*, 511 U.S. 318 (1994)(custody determination is objective, based on whether a reasonable person would feel free to leave); Voluntariness is assessed under the Due Process Clause. *See Withrow v. Williams* 507 U.S. 680, 688–89 (1993) (Miranda claims are cognizable on habeas and require voluntariness); *See also Colorado v. Connelly*, 479 U.S. 157, 167 (1986).

## ARGUMENT

## I. SUPPRESSION OF PRE-ARREST AND CUSTODIAL STATEMENTS (NOVEMBER 18 & NOVEMBER 21, 2023)

### A. Mr. Seetaram Was in Custody; Miranda Warnings Were Required and Not Timely Given.

#### 1. November 18, 2023, Statement at the FBI Office

Under the totality-of the circumstances-Mr. Seetaram appearing at the FBI office after being pressured to come in that same day, being interrogated

for hours and not given *Miranda* warning until several hours later, a reasonable person would not have felt free to terminate the encounter and leave.  Notably, the timing of the *Miranda* warning on November 18, 2023, is the beginning of a pattern by the FBI in this investigation of asking incriminating questions first and then advising the suspect of his rights later. This is directly in violation of the Supreme Court's holding in *Missouri v. Seibert,* 542 U.S. 600 (2004).

### 2.  November 21, 2023, Statement

Under the totality of the circumstances—including transport in an unmarked vehicle, a remote Snake Road setting, multiple agents' presence, accusatory displays of graphic photographs, continued questioning in transit and at the FBI office and both Seetaram and the agents statements—a reasonable person would not have felt free to terminate the encounter and leave. *See Howes*, 565 U.S. at 509–10; *Stansbury*, 511 U.S. at 322–25.

### B. The Government Has Not Met Its Burden to Show a Knowing, Intelligent, and Voluntary Waiver.

### 1.  November 18, 2023, Statement-Question First-Warn Later

*Miranda* warnings were administered only after agents told Mr. Seetaram he was under arrest—well after inculpatory statements had already been elicited.  All of Mr. Seetaram's statements made to the Agents on

November 21, 2023, are inadmissible. *See Miranda*, 384 U.S. 436; *Withrow*, 507 U.S. at 688–89; *Missouri v. Seibert,* 542 U.S. 600 (2004).

Additionally, when considered in conjunction with Mr. Seetaram's cognitive limitations as argued in Section III(D) *infra* it demonstrates that this is not a knowing, intelligent and voluntary waiver.

### 2.    November 21, 2023, Statement-Question First-Warn Later

*Miranda* warnings were administered only after agents told Mr. Seetaram he was under arrest—well after inculpatory statements had already been elicited. All of Mr. Seetaram's statements made to the Agents on November 21, 2023, are inadmissible. *See Miranda*, 384 U.S. 436; *Withrow*, 507 U.S. at 688–89; *Missouri v. Seibert,* 542 U.S. 600 (2004).

### C.    Statements Were Involuntary Under the Due Process Clause.
### 1. November 18 and November 21, 2023, Statements

Threats made to Mr. Seetaram and his wife that they would be arrested and that his children would be without parents, the locations of the statements, and prolonged interrogations overbore his will. *See Connelly*, 479 U.S. at 167; *Arizona v. Fulminante* 499 U.S. 279 (1991) (coerced confession induced by promise of protection is involuntary), (1991); *Rogers v. Richmond,* 365 U.S. 534, 545, 81 S.Ct. 735, 741, 5 L.Ed.2d 760 (1961) (defendant's confession

coerced when obtained in response to a police threat to take defendant's wife into custody).

## D. Promises of Leniency and Repeated Requests to Go Home Rendered Statements Involuntary

### 1.    November 21, 2023, Statement

Mr. Seetaram's own repeated questions about whether he was going home demonstrate that he himself perceived his confinement as custodial. The agents multiple responses that essentially conveyed to Mr. Seetaram that the Agents do not know if he is going home with his family or going to be able to get a bond is indicative of the fact that an objective person would not feel free to leave under the circumstances.  The Supreme Court has made clear that the custody analysis is objective, asking whether a reasonable person would feel free to leave. *See Stansbury v. California*, 511 U.S. 318, 322–25 (1994). Mr. Seetaram's repeated inquiries confirm that a reasonable person in his shoes would not have believed he could simply walk away. The transcripts reinforce this: at different points he stated, 'Come on man, I wanna go home,' 'Shit, I wanna go home man,' and 'Man, I hope I get bonded out, you think so?' These repeated questions illustrate not only his desire, but his clear perception that he was under restraint and dependent on the agents' decisions.

The transcripts also reveal repeated inducements: Agents assured him, 'You have the possible benefit out there … if you lie, that possible benefit is gonna disappear.' The agents further told him, 'You've made the mountain into a speedbump.' Later, they repeated the same assurance, again telling him that his cooperation had 'made the mountain into a molehill.' These statements directly tied his cooperation to promises of leniency, which courts have repeatedly held renders a confession involuntary.

Mr. Seetaram's repeated questions and pleas about whether he would be going home demonstrate that he was focused on the possibility of release. Agents exploited this fear and explicitly linked it to his willingness to incriminate himself. They told him he had "the possible benefit out there" if he cooperated, but that if he lied, "that possible benefit is gonna disappear." They also minimized the seriousness of the situation, telling him he had turned "a mountain into a speedbump." These were promises of leniency.

Such inducements render statements involuntary under the Fifth Amendment. In *United States v. Lall,* 607 F.3d 1277, 1285–86 (11th Cir. 2010) (confession involuntary where officer promised it would not be used against defendant)., , the Eleventh Circuit held that suppression was required where a defendant was told his statements would not be used against him. Other courts agree. *Streetman v. Lynaugh,* 812 F.2d 950 (5th Cir. 1987)

(general promises that cooperation will help can render confession involuntary).

Here, agents' direct promises, coupled with Mr. Seetaram's repeated concern about going home, the agents responses and promises of leniency, the prior threats by the agents and the deliberate delay in administering *Miranda* show his will was overborne. Taken together, these facts make clear that his statements were involuntary under *Bram v. United States*, 168 U.S. 532 (1897), *Arizona v. Fulminante*, 499 U.S. 279 (1991), and *United States v. Lall*, 607 F.3d 1277 (11th Cir. 2010), and inadmissible under question first-advise later policy of the FBI. *See Missouri v. Seibert*, 542 U.S. 600 (2004). The Court should therefore suppress these statements.

## II. SUPPRESSION OF DEBRIEFING/PROFFER STATEMENTS (DECEMBER 11, 15 & 22, 2023)

### A. The December 11, 15, and 22 Sessions Were Plea Discussions With Prosecutorial Authority and Are Barred by Rule 410.

All three sessions occurred at the courthouse with AUSA participation and defense counsel present, and they centered on cooperation, the government's evaluation of his cooperations and potential concessions Mr. Seetaram could receive for providing substantial assistance. They therefore constitute plea discussions within Rule 410(a)(4). *See Robertson*, 582 F.2d at 1366 [FN1]; *Pielago*, 135 F.3d at 709–10.

## B. No Valid Waiver Exists; Any Ambiguity Must Be Resolved in the Defendant's Favor.

The government has not and cannot produce a Rule 410 waiver since they chose to proceed without sign a proffer/"Queen for a Day letter". Even if an agreement were produced, any ambiguity would be construed in Mr. Seetaram's favor. *See Mezzanatto*, 513 U.S. at 203–06; *Pielago*, 135 F.3d at 709–10.

### III. SUPPRESSION OF GRAND JURY TESTIMONY (DECEMBER 13, 2023)

### A. Defective *Miranda* Warnings Undermine Any Waiver

### 1. Improper Restriction of Mr. Seetaram's Right to Remain Silent

The prosecutor advised Mr. Seetaram only that he had the right to remain silent "if anything [he was] asked tended to incriminate" him. This language impermissibly narrowed the scope of the right, suggesting that he was obliged to answer questions unless they were directly incriminating. Such a restriction fundamentally misstates *Miranda*'s protections, which apply broadly to any custodial interrogation, regardless of whether a particular question appears incriminating on its face. *See Miranda v. Arizona* 384 U.S. 436, 467–68 (1966) (requiring suspects be clearly informed of the unqualified right to remain silent and to counsel). By conditioning silence on incrimination, the prosecutor conveyed a limited and misleading version of the right.

## 2. Omission of Mr. Seetaram's Right to Stop Questioning at Any Time

The prosecutor also failed to advise Mr. Seetaram that he could invoke his right to silence at any time and stop answering further questions. This omission deprived him of notice of the continuing nature of the right, a core element of *Miranda*. *See United States v. Tillman*, 963 F.2d 137, 141 (6th Cir. 1992)(Although there is no mandate that "magic words" be used, there is a requirement that all elements of *Miranda* be conveyed).

## 3. Combined Effect Requires Suppression

Taken together, the government both narrowed the right to silence and omitted the essential advisement that questioning could be halted at any time. The warnings therefore failed to reasonably convey the full scope of Mr. Seetaram's constitutional protections, rendering any waiver invalid. Because the warnings misstated and truncated the rights guaranteed by *Miranda*, the Court must suppress Mr. Seetaram's grand jury testimony.

### B. A *Miranda* Waiver Cannot Override Rule 410's Protections

Even *assuming arguendo* that Mr. Seetaram validly waived his *Miranda* rights, such a waiver does not vitiate the separate statutory protections of Federal Rule of Evidence 410.   A *Miranda* waiver, by itself, just covers Fifth Amendment rights against self-incrimination; it does not

waive evidentiary protections under Rule 410.  *United States v. Stevens, 455 F. Supp. 3d 1154* (W.D. Wash. 2020).  During the grand jury proceeding, the prosecutor elicited that Mr. Seetaram appeared 'voluntarily' and not pursuant to a subpoena. The prosecutor confirmed that he was testifying for the purpose of receiving a benefit for his cooperation:

Q.   As a result of your cooperation in this federal investigation, are you hoping to receive some kind of benefit?"
A. Yes.

"Are you providing testimony today with the hopes of entering into an agreement with the government for a recommendation to a federal judge regarding these uncharged crimes?"
A. Yes.

December 13, 2023, Grand Jury Transcript pp.4-5.

These circumstances demonstrate that his grand jury testimony was not ordinary compelled testimony, but rather part of ongoing plea discussions with the prosecution.  Since Seetaram's grand jury appearance was voluntary, benefit-driven, and orchestrated by the AUSA as part of cooperation, then Rule 410 is implicated.

Rule 410 provides that statements made during plea discussions with an attorney for the prosecuting authority are inadmissible against the defendant unless there is an express waiver. The Supreme Court has held that these protections may be waived, but only if the waiver is explicit and voluntary. *United States v. Mezzanatto* (1995) (Rule 410 protections may be

waived, but only explicitly and voluntarily)., 513 U.S. 196, 200–01 (1995). The former Fifth Circuit, whose precedents are binding in this Circuit, likewise held that plea discussions are inadmissible absent an express waiver. *United States v. Robertson* 582 F.2d 1356, 1366 (5th Cir. 1978) (*en banc*) (statements inadmissible if made in course of plea discussions absent express waiver). Here, no such waiver exists. Mr. Seetaram's grand jury testimony occurred in the midst of proffer sessions with the AUSA, and he confirmed that he was appearing voluntarily and hoping for a benefit. Without an explicit Rule 410 waiver, the government cannot rely on a *Miranda* waiver alone to admit statements made during plea discussions.

### C. No Knowing, Intelligent, and Voluntary Waiver of the Fifth Amendment Right Occurred.

Mr. Seetaram's testimony followed counsel's misrepresentations that appearing before the grand jury was his "only choice." A waiver is valid only if made with full awareness of the rights and consequences. *See United States v. Washington* (1977) (grand jury testimony inadmissible if waiver of rights invalid)., 431 U.S. 181 (1977); *Moran v. Burbine* (1986) (waiver must be knowing and intelligent, requiring full awareness of rights)., 475 U.S. 412, 421 (1986).

### D. Cognitive Limitations Further Undermine Any Purported Waiver.

Neurocognitive deficits impede comprehension and decision-making under pressure, particularly when guided by an authority figure; those deficits must be weighed in the totality analysis. *See Miller v. Dugger* 838 F.2d 1530, 1539 (11th Cir. 1988) (cognitive impairments relevant to voluntariness of waiver); *Smith v. Zant,* 887 F.2d 1407, 1427–28  (11th Cir. 1989) (mental limitations are factor in voluntariness analysis).

Neuropsychological testing conducted by Dr. Michele Quiroga, Psy.D., demonstrates that Mr. Seetaram functions in the borderline range of intellectual functioning (FSIQ 74) with significant deficits in executive functioning, abstract reasoning, and problem-solving, as well as symptoms of ADHD. These impairments substantially limit his ability to understand complex legal instructions and the long-term consequences of decisions, especially when guided by authority figures.

Dr. Michele Quiroga's evaluation confirms that Mr. Seetaram's cognitive functioning is impaired: his FSIQ is 74, placing him in the borderline range, with severe deficits in executive functioning, abstract reasoning, and adaptive decision-making. He also demonstrates symptoms of ADHD, further impairing sustained attention and comprehension. These

findings show that Mr. Seetaram is highly suggestible, struggles to weigh consequences, and cannot meaningfully understand complex legal instructions without distortion. Any purported waiver of his Fifth Amendment rights in the grand jury context therefore cannot be deemed knowing, intelligent, or voluntary. *See Miller v. Dugger* 838 F.2d 1530, 1539 (11th Cir. 1988) (cognitive impairments relevant to voluntariness of waiver); *Smith v. Zant* 887 F.2d 1407, 1427–28 (11th Cir. 1989).

## CONCLUSION

For the foregoing reasons, the Court should suppress (1) all statements elicited during the November 18 and November 21, 2023, encounters and transport; (2) all statements made during the December 11, December 15, and December 22, 2023, debriefings; and (3) all testimony given by Mr. Seetaram on December 13, 2023, before the federal grand jury.

Respectfully submitted,

GENNARO CARIGLIO JR. P.L.
8101 Biscayne Blvd
Penthouse 701
Miami, FL 33138
Telephone: (305) 899-0438
Facsimile: (305) 373-3832
E-mail: sobeachlaw@aol.com
Counsel for the Defendant

By: <u>/s/ Gennaro Cariglio Jr.</u>
     Gennaro Cariglio Jr., Esq.
     Florida Bar No. 51985