UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 23-cr-20483-RKA

UNITED STATES OF AMERICA,
  Plaintiff,
v.
AVIN SEETARAM,
  Defendant.
_____/

*DEFENDANT'S CONSOLIDATED RESPONSE TO THE GOVERNMENT'S EMERGENCY MOTION TO STRIKE [ECF 308]
AND REPLY TO THE GOVERNMENT'S RESPONSE TO MOTION TO SUPPRESS [ECF 316]*

COMES NOW, Avin Seetaram, by and through undersigned counsel and files his response to the Goverment's Motion to Strike (ECF 308) and his reply to the Government's Response to the Motion to Suppress (ECF 316) as follows:

**I. The Government's Privilege Argument Is Premature and Legally Unfounded**

The Government's request for a ruling declaring a waiver of the attorney-client privilege is premature and without legal basis. Whether any privilege is waived depends entirely on how the defense presents evidence at the evidentiary hearing. If testimony concerns statements by counsel relayed by or through a third party—including but not limited to statements made by the Government , that does not waive the privilege. Those are not direct attorney-client communications.

Courts have consistently held that a defendant does not waive privilege merely

by referencing counsel's advice to explain his state of mind, unless he affirmatively relies on counsel's conduct as a defense. The cases cited by the Government—*United States v. Prebish*, 290 F. Supp. 268 (S.D. Fla. 1968), *Johnson v. Alabama*, 256 F.3d 1156 (11th Cir. 2001), and *Laughner v. United States*, 373 F.2d 326 (5th Cir. 1967)—do not support its position.

In *Prebish*, the court expressly limited any waiver to narrow issues and rejected the Government's argument for a broad waiver, holding:

"If the defendants had waived the privilege by testifying or allowing their counsel to testify about the specific content of conversations between defendants and defense counsel then a different question would have been presented. But the defense counsel testified only that they and their counsel relied on these government representations. In the context of the case I did not think this testimony was sufficient to waive the attorney-client privilege concerning all conversations between defendants and their counsel."
*Id*. at 273.

In *Johnson*, waiver arose only because the defendant himself alleged ineffective assistance of counsel and testified at his §2254 hearing regarding the advice given. *Id.* at 1178. No such claim exists here; Mr. Seetaram has not challenged counsel's performance, nor has he testified to any privileged communications.

Similarly, *Laughner* involved a §2255 ineffective-assistance claim, where the court held that a client waives privilege by directly attacking counsel's performance. *Id.* at 326 f n.1. Again, there has been no such attack here—only an explanation of Mr. Seetaram's understanding of events surrounding his grand jury testimony.

The Government also mischaracterizes the scope of the upcoming evidentiary hearing. Any testimony about the debriefings and Rule 410 will concern representations made by the Government to defense counsel, not privileged discussions between Mr. Seetaram and his attorney. Those representations—standard in any debriefing evaluating potential cooperation—can be presented without intruding upon privileged communications. The Court can also take judicial notice of the procedural posture of this case. These realities make the Government's concern purely speculative. Accordingly, it would be premature for the Court to rule on any waiver issue before knowing what, if any, privileged matter is placed at issue by the defense.

## II. Mr. Seetaram was in Custody for Purposes of *Miranda*

### A. November 18, 2023 – FBI Office

The Government concedes Mr. Seetaram asked to leave the FBI office and return later for a polygraph. *See* ECF 316 at 2. Instead of letting Mr. Seetaram leave as requested, they persuaded him to stay. For the reasons detailed in his Omnibus Motion (ECF 288), the totality of circumstances shows Mr. Seetaram was in custody for *Miranda* purposes.

### B. November 21, 2023 – Snake Road and FBI Headquarters

By November 21, Mr. Seetaram was unquestionably in custody. Agents woke him at his house, transported him to a remote Snake Road location, confronted him with a photograph of a decomposed body, and questioned him for hours while refusing

his repeated requests to go home. *See* ECF 316 at 7. The ERT truck on scene contained numerous armed agents wearing FBI insignia—all visible to Mr. Seetaram during questioning.

After transport, agents bypassed the public entrance and took him through a secured entry into FBI headquarters under full escort. That controlled setting confirms custody. A reasonable person would not have felt free to leave. *See United States v. Craighead*, 539 F.3d 1073, 1084 (9th Cir. 2008); *United States v. Lee*, 699 F.2d 466, 467 (9th Cir. 1982). The cases the Government cites—*Woodson, Brown,* and *Matcovich*—involved voluntary encounters in homes or public areas, not locked FBI corridors.

The Government's claim that custody hinged on when the United States Attorney's Office "authorized" arrest is irrelevant. Custody turns on objective restraint. *See Stansbury v. California*, 511 U.S. 318, 322 (1994); *United States v. Brown*, 441 F.3d 1330, 1347 (11th Cir. 2006); *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). The later arrest authorization cannot transform what was already a custodial interrogation into a voluntary encounter.

Agents also violated *Missouri v. Seibert*, 542 U.S. 600 (2004), by questioning Mr. Seetaram extensively before any warnings, then repeating the same questioning after. This "question-first, warn-later" tactic renders all statements inadmissible.

**C.     The Government's Cases are Distinguishable**

The Government's cited authorities bear no resemblance to the facts here. Every case it relies on involved a voluntary, non-custodial encounter—settings far removed from Mr. Seetaram's prolonged and coercive interrogation.

In *United States v. Woodson*, 30 F.4th 1295 (11th Cir. 2022), the defendant was interviewed in the front seat of an unlocked van outside his home, explicitly told he was not under arrest. In *United States v. Brown*, 441 F.3d 1330 (11th Cir. 2006), questioning occurred in the defendant's own residence with family present and officers advising he was free to leave. In *United States v. Matcovich*, 522 F. App'x 850 (11th Cir. 2013), the defendant remained at home, unrestrained, and told he could stop answering at any time. None of those conditions existed here: Mr. Seetaram was transported against his will from a remote rural site to a secure FBI facility, denied his request to go home, and questioned in a locked, police-dominated environment.

Other cases involved neutral, public, or clearly noncustodial settings. In *United States v. Luna-Encinas*, 603 F.3d 876 (11th Cir. 2010), found no custody where guns were briefly displayed and the suspect remained unrestrained outdoors. In *United States v. Muegge*, 225 F.3d 1267 (11th Cir. 2000), the Court upheld voluntariness where the defendant was told multiple times he could leave. Again, Mr. Seetaram's request to "go home" was ignored—precisely the restraint absent in *Muegge*.

The remaining authorities concern post-*Miranda* interviews or valid waivers, not pre-warning interrogation. *United States v. Jones*, 32 F.3d 1512 (11th Cir. 1994),

*United States v. Barfield,* 507 F.2d 53 (5th Cir. 1975), *United States v. Willix*, 723 F. App'x 908 (11th Cir. 2018)(unpublished), *United States v. Davidson*, 768 F.2d 1266 (11th Cir. 1985), and *United States v. Quinn*, 123 F.3d 1415 (11th Cir. 1997), all involved warnings given and waivers executed before questioning. Mr. Seetaram, by contrast, was questioned for hours before any warnings, while agents conditioned his "possible benefit" on "telling the truth" and promised to "see what they could do" about his release.

Finally, *United States v. Garcia,* 890 F.2d 355 (11th Cir. 1989), and *United States v. Alim*, 256 F. App'x 236 (11th Cir. 2007), address consent searches amid a police presence—not custodial interrogation. Collectively, the Government's cases demonstrate what a non-custodial interview looks like—and by contrast, confirm that Mr. Seetaram's experience was custodial and coercive in every respect.

**III. The Government's Motion to Strike Mental Health Factors is Baseless**

In a footnote, the Government moves to strike all references to Mr. Seetaram's mental health in assessing whether he was competent to waive *Miranda* and whether his statements were voluntary. *See* ECF 316 at n.18. This request is entirely without merit.

The Court ordered a competency evaluation, which Dr. Buigas performed in full. Any questioning by Dr. Buigas about the *Miranda* waiver was beyond the scope of that order. Counsel is unaware of any testing or inquiry by Dr. Quiroga that

specifically addressed Mr. Seetaram's understanding or waiver of his *Miranda* rights. The Government's attempt to now question Seetaram through its own expert—without counsel present—about his *Miranda* waiver is improper and unsupported by any authority. Notably, the government has not alleged that Dr. Buigas was unable to conduct sufficient testing to evaluate Seetaram's competency.

### IV. The Entirety of the Debriefings and Grand Jury Testimony Are Inadmissible Under Rule 410

The December 2023 debriefings were conducted without a proffer agreement or any Rule 410 waiver. Under *United States v. Robertson*, 582 F.2d 1356 (5th Cir. 1978), statements made during plea discussions are inadmissible unless the waiver is explicit and voluntary.

The Government's own response confirms the debriefings were part of the plea negotiations—it evaluated Seetaram's statements for substantial assistance and offered not to use them in its case-in-chief except under vague conditions. ECF 316 n.13. That is the very function of a *Kastigar* letter. If the Government wanted to proceed as they suggest, they should have issued a *Kastigar* letter and obtained a clear Rule 410 waiver. Its claim that *Kastigar* letters "do not cover crimes of violence" is irrelevant. The United States Attorney's Office for the Southern District of Florida's policy choice cannot waive Mr. Seetaram's evidentiary protections. Rule 410 bars use of these debriefing statements in any form.

Since the grand jury testimony was Mr. Seetaram testifying related to his substantial assistance and thus was part of plea negotiations, this is also inadmissible for the reasons argued in the Omnibus Motion to Suppress (ECF 288).

The Government's reliance on *United States v. Merrill*, 685 F.3d 1002 (11th Cir. 2012); *Hogan v. United States*, 550 F. App'x 756 (11th Cir. 2013)(unpublished); and *United States v. Robertson*, 582 F.2d 1356 (5th Cir. 1978), is misplaced. Each case involved a voluntary, non-custodial meeting before indictment—circumstances that bear no resemblance to what occurred here.

In *Merrill*, the defendant was not under arrest and was uncharged. *Id.* at 1013. Seetaram, by contrast, had already been arrested on the charges that he was later indicted for, questioned for hours without *Miranda*, and told that his "possible benefit" depended on "telling the truth." These were direct inducements tied to a custodial interrogation, not voluntary plea discussions. His later grand jury appearance was a continuation of that same coercive chain, not a detached, informed choice. *Merrill* involved statements made during debriefings *prior* to the grand jury testimony.

*Hogan* is likewise inapposite. There, the defendant expressly told his defense counsel that he did not participate in the debriefing with the intent to plead guilty. *Id.* at 759. That is not the case here.

*Robertson* is even further removed. That case involved confessions made to DEA agents after the defendant was advised of his *Miranda* rights but prior to being

taken to Court. No prosecutors or defense counsel were involved in the meetings and the discussions regarding a resolution of the case had not yet begun. That is not the case here.

## V. The Government's Misapplication of *Miranda* at the Grand Jury Requires Suppression

The Government's assertion that Seetaram's grand jury testimony was voluntary and beyond the scope of *Miranda* protection is wrong on both the facts and the law.

### A. The *Miranda* Warnings Were Constitutionally Inadequate

The Government's suggestion that *Miranda* does not apply in the grand jury context ignores *United States v. Washington*, 431 U.S. 181 (1977), which left open the precise question now before this Court: whether the coercive atmosphere of a grand jury appearance can render statements involuntary. *Id.* at 186–87.

The AUSA's advisement omitted the essential fourth component recognized in *Miranda v. Arizona*, 384 U.S. 436 (1966): that the accused "has the continuing right to stop answering questions at any time." Telling Seetaram he could "consult with counsel outside the room" is not equivalent to advising him that he could stop. The record shows that he remained inside the grand jury room, without counsel present, while the prosecutor questioned him on matters already the subject of an un-*Mirandized* confession. That is precisely the kind of custodial compulsion *Miranda* was designed to prevent.

**B. The Government's "Perjury" Argument Misses the Point**

The Government's reliance on *Veal* and *Hogan* to claim that "a defendant cannot immunize perjury" misses the point. Mr. Seetaram is not asking to excuse perjury—his position is that the grand jury statements are inadmissible because they were the direct product of an unconstitutional custodial interrogation and are inadmissible under Federal Rule of Evidence 410. The Supreme Court has long held that the use of involuntary statements violates due process. *Mincey v. Arizona*, 437 U.S. 385, 398 (1978).

## CONCLUSION

For the foregoing reasons, Mr. Seetaram respectfully requests that this Court deny the Government's Emergency Motion to Strike, and grant his Omnibus Motion to Suppress.

Respectfully submitted,

GENNARO CARIGLIO JR. P.L.
8101 Biscayne Blvd
Penthouse 701
Miami, FL 33138
Telephone: (305) 899-0438
Facsimile: (305) 373-3832
E-mail: sobeachlaw@aol.com
Counsel for the Defendant

By:  /s/ Gennaro Cariglio Jr.
     Gennaro Cariglio Jr., Esq.
     Florida Bar No. 51985