**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 23-cr-20483-ALTMAN**

**UNITED STATES OF AMERICA,**

*v.*

**AVIN SEETARAM,**

   *Defendant.*
_____/

**ORDER DENYING MOTION TO DISMISS**

Avin Seetaram moves to dismiss three counts—Counts Six, Nine, and Ten—of the Superseding Indictment. *See* Motion to Dismiss (the "Motion") [ECF No. 367]. Count Six charges Seetaram with discharging a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c). *See* Superseding Indictment [ECF No. 201] at 6. Count Nine charges him with conspiring to use and carry a firearm during a crime of violence, in violation of 18 U.S.C. § 924(o). *See id.* at 8. And Count Ten charges him with causing the death of a person during a crime of violence, in violation of 18 U.S.C. § 924(j). *See id.* at 9. Those counts are predicated on the government's contention that Count Five—stalking resulting in death, in violation of 18 U.S.C. §§ 2261(2)(A) and 2261(b)(1)—qualifies as a crime of violence. *See id.* at 5. But Seetaram argues that "the federal cyberstalking statute [ ] is not a crime of violence." Mot. at 2. We disagree.

    **I.**    **The Modified Categorical Approach**

Before determining whether an offense constitutes a crime of violence, we must first decide whether to apply the "categorical" or "modified categorical" approach. "Under the categorical approach, we do not look to the specific conduct underlying the defendant's conviction" and instead "presume that the conviction rested upon nothing more than the least of the acts criminalized by the statute." *United States v. Harrison*, 56 F.4th 1325, 1331 (11th Cir. 2023) (cleaned up). So, under that

approach, "we look to the elements of the statute of conviction and determine if the least of the acts criminalized qualifies as a crime of violence. If it does not, a conviction under the statute cannot qualify as a crime of violence." *Ibid.* (cleaned up). "But when a statute is divisible—meaning it defines multiple potential crimes—we instead apply the modified categorical approach. Under this approach, we may look beyond the elements of the predicate offense to a limited class of documents—including the indictment, jury instructions, plea agreement, and plea colloquy—to determine which specific crime, with which elements, a defendant was convicted of." *Alvarado-Linares v. United States*, 44 F.4th 1334, 1342 (11th Cir. 2022).

Here, we employ the modified categorical approach. Section 2261A consists of four subsections: (1)(A), (1)(B), (2)(A), and (2)(B). As an initial matter, the statute is divisible between § 2261A(1) and § 2261A(2). Section 2261A(2) requires the government to prove that a defendant "use[d] the mail, any interactive computer service or electronical communication service or electronic communication system or interstate commerce, or any other facility of interstate or foreign commerce." And this element is absent from § 2261A(1), which requires the government to prove that the defendant "travel[ed] in interstate or foreign commerce or [was] present within the special maritime and territorial jurisdiction of the United States, or enter[ed] or le[ft] Indian country[.]" What's more, Subsections (1)(A) and (1)(B)—and by extension (2)(A) and (2)(B)—*likewise* require proof of distinct elements, so § 2261A is in fact divisible into *four* separate crimes.[1] "We therefore conclude that § 2261A is divisible into four separate crimes, and that we must apply the modified categorical approach." *United States v. Ali*, 2025 WL 2938420, at *2 (S.D. Fla. Oct. 16, 2025) (Altman, J.).

---

[1] And § 2261 is itself divided into subsections.

2

**II.     Cyberstalking Resulting in Death is a Crime of Violence**

We next consider whether cyberstalking resulting in death, in violation of § 2261A(2)(A) and § 2261(b)(1), has "as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 16(a). Seetaram argues that it doesn't. In his view, "[t]he federal cyberstalking statute imposes strict liability for conduct that places someone in reasonable fear; it does not require as an element the use of force, attempted force, or a threatened use of force." Mot. at 3. He further contends that, "[w]ere the government to argue that . . . [Section 2261](b)(1) transforms the cyberstalking statute into a crime of violence[,] there are several examples where the statute could be violated without the use, attempted use, or threatened use of force." *Id.* at 12. The government counters that "the elements of § 2261A(2)(A) require a threat of physical force" and that, in any event, "stalking resulting in death, in violation of § 2261(b)(1) [ ] certainly requires the use of force . . . because the Government cannot charge a dead person with violating § 2261A(2)(A)." Response in Opposition to MTD (the "Response") [ECF No. 387] at 4, 6.

As relevant here, § 2261A(2)(A) requires the government to prove that a defendant (1) had the "intent to kill, injure, harass, intimidate, or place under surveillance with intent to kill, injure, harass, or intimidate another person"; and (2) "use[d] the mail, any interactive computer service or electronic communication system of interstate commerce, or any other facility of interstate or foreign commerce"; (3) "to engage in a course of conduct that . . . place[d] that person in reasonable fear of the death of or serious bodily injury to . . . a person described in clause (i), (ii), (iii), or (iv) of paragraph (1)(A)."[2] And § 2261(b)(1) provides that "[a] person who violates . . . section 2261A shall be . . . imprisoned . . . for life or any term of years, if death of the victim results." Applying the relevant

---

[2] Section 2261A(1)(A) lists three such people: "(i) that person; (ii) an immediate family member . . . of that person; [or] (iii) a spouse or intimate partner of that person."

3

tools of statutory interpretation, we find that cyberstalking resulting in death *is* a crime of violence under the modified categorical approach.

"[S]tatutory interpretation must begin with, and ultimately heed, what a statute actually says." *Groff v. DeJoy*, 600 U.S. 447, 468 (2023) (cleaned up). To that end, "a court's proper starting point lies in a careful examination of the ordinary meaning and structure of the law itself." *Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427, 436 (2019). And "to determine the ordinary meaning of a term, we do not look at it in isolation" and instead "look to the entire statutory context to ascertain the plain meaning of a statute." *Santos v. Healthcare Revenue Recovery Grp., LLC.*, 90 F.4th 1144, 1152 (11th Cir. 2024) (cleaned up). Here, accounting for "the whole phrase" counsels in favor of embracing a "more targeted reading." *Dubin v. United States*, 599 U.S. 110, 120 (2023).

Section 2261(b)(1) applies "if death of the victim results." That phrasing indicates the intentional, volitional use of force. In common parlance, the word victim means "one that is acted on and usually adversely affected by a force or agent." Webster's Third New International Dictionary 2550 (2002); *see also* Black's Law Dictionary 1884 (12th ed. 2024) ("A person harmed by a crime, tort, or other wrong."); American Heritage Dictionary 1917 (4th ed. 2000) ("One who is harmed or killed by another, especially by someone committing a criminal or unlawful act."). And a crime "where death results necessarily involves the 'use of physical force.'" *United States v. Runyon*, 994 F.3d 192, 203 (4th Cir. 2021); *see also In re Hall*, 979 F.3d 339, 345 (5th Cir. 2020) ("[W]e have no difficulty concluding that kidnapping resulting in death entails the kind of reckless conduct contemplated by the 'use of force' required under 18 U.S.C. § 924(c)(3)(A)."). So, as we see it, the death-resulting language, combined with the statute's specific reference to "the victim," demands a direct causal connection between the cyberstalking and the death, such that "the victim" of the cyberstalking *must be* the person who was *proximately* harmed by the offense—not just anyone who may have experienced some derivative after-effect of the crime.

And analogous statutory contexts support our interpretation. For instance, the Mandatory Victims Restitution Act of 1996, as the Supreme Court has noted, incorporates a "proximate cause requirement," such that a "victim" is defined as "a person *directly and proximately* harmed as a result of the commission of" the offense. *Robers v. United States*, 572 U.S. 639, 645 (2014) (quoting 18 U.S.C. § 3664(e)). Similarly, under the Sentencing Guidelines, "[a] person is a 'victim' if the individual 'sustained any part of the actual loss,'" defined as the "reasonably foreseeable pecuniary harm that resulted from the offense.'" *United States v. Green*, 2023 WL 2883003, at *2 (11th Cir. Apr. 11, 2023) (quoting U.S.S.G. §§ 2B1.1(b)(2)(A)(i), 2B1.1(b)(1)). And, in *Paroline v. United States*, 572 U.S. 434 (2014), the Supreme Court read a component of the Violence Against Women Act of 1994 "to impose a general proximate-cause limitation," such that the statute's definition of "victim"—defined as "the individual harmed as a result of a commission of a crime under this chapter"—includes *only* "losses suffered as a proximate result of the offense." *Id.* at 445–46 (quoting 18 U.S.C. § 2259(c)).

Our statute (it's true) doesn't define the term "victim." But, "[w]hen interpreting statutes, we recognize that Congress legislates against the backdrop[ ] of certain unexpressed presumptions." *Hewitt v. United States*, 606 U.S. 419, 431 (2025) (cleaned up). And "Congress is presumed to have legislated against the background of our traditional legal concepts which render proximate cause a critical factor, and [the] absence of contrary direction here is taken as satisfaction of widely accepted definitions, not as a departure from them." *United States v. Monzel*, 641 F.3d 528, 536 (D.C. Cir. 2011) (cleaned up); *see also Paroline*, 572 U.S. at 446 ("Proximate cause is a standard aspect of causation in criminal law and the law of torts. Given proximate cause's traditional role in causation analysis, this Court has more than once found a proximate-cause requirement built into a statute that did not expressly impose one." (citations omitted)); *CSX Transp., Inc. v. McBride*, 564 U.S. 685, 708 (2011) (Roberts, C.J., dissenting) ("We have applied the standard requirement of proximate cause to actions under federal statutes where the text did not expressly provide for it."). Nothing in the text or structure

5

of § 2261(b)(1) suggests that Congress intended to discard those default principles here. *See Bank of Am. Corp. v. City of Miami*, 581 U.S. 189, 201 (2017) ("We assume Congress is familiar with the common-law rule and does not mean to displace it *sub silentio* in federal causes of action." (quotation marks omitted)).

Seetaram's ChatGPT-summoned, parade of hypothetical horribles thus finds no support in the text or structure of § 2261(b)(1). A person who commits suicide, suffers a heart attack, or gets into a car crash after being placed in "reasonable fear of death or bodily injury" to himself or to a qualifying loved one *has* been harmed by the stalker. As a factual matter, that is, he's a "person" whose death occurs *because of* the stalker's actions. But he isn't "the victim" of the stalker's crime for the purposes of § 2261(b)(1), which resists an open-ended, but-for theory of causation. Under § 2261(b)(1), the only "victim" of the crime is the person who dies as a *proximate* result—*i.e.*, with reasonable foreseeability—of the stalker's actions. *See CFTC v. S. Tr. Metals, Inc.*, 894 F.3d 1313, 1330 (11th Cir. 2018) ("As the Supreme Court has explained, the term 'proximate cause' is shorthand for a concept: Injuries have countless causes, and not all should give rise to legal liability." (cleaned up)).

Given everything we've said thus far, we find Seetaram's hypotheticals too farfetched—that is, not sufficiently proximate or foreseeable—to fall within the ambit of the statute. The Supreme Court has cautioned against surrendering to an excessive "legal imagination" when undergoing this categorical inquiry. *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007). It has urged us to focus instead on the "realistic probability, not [the] theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime." *Moncrieffe v. Holder*, 569 U.S. 184, 191 (2013) (quotation marks omitted). And we find it entirely implausible that the government would *ever* charge stalking resulting in death in the circumstances Seetaram's lawyer—by an intrepid use of

6

ChatGPT—has conjured.[3] *See* Mot. at 13 (describing hypothetical people who die by "suicide" or a "stress-induced heart attack" after the stalker threatens *self*-harm).[4]

In sum, we hold that stalking resulting in death—in violation of §§ 2261A(2)(A) and 2261(b)(1)—*is* a crime of violence because only deaths that result from the direct and natural course of cyberstalking fall within the statute's reach. This outcome conforms with the ordinary and legal meaning of the word "victim." And it comports with the common-sense understanding that "a statute criminalizing the actual killing of another person inevitably involves a level of force capable of causing physical pain or injury." *Alvarado-Linares*, 44 F.4th at 1343–44 (quotation marks omitted); *see also In re Irby*, 858 F.3d 231, 238 (4th Cir. 2017) ("[O]ne cannot unlawfully kill another human being without a use of physical force capable of causing physical pain or injury to another.").[5]

---

[3] Indeed, Seetaram hasn't offered a *single* example in which the government, *anywhere* in the country, has charged a violation of §§ 2261A(2)(A) and 2261(b)(1) under these circumstances. That perhaps explains his "excursion into the absurd." *United States v. Taylor*, 596 U.S. 845, 861 (2022) (Thomas, J., dissenting); *see also id.* at 874 (Alito, J., dissenting) (observing that "cases involving § 924(c)(3)(A) have veered off into fantasy land").

[4] Nor are we persuaded by Seetaram's other resulting-in-death example: a defendant posting someone's home address and schedule "on extremist forums" along with a note "saying, 'I hope someone does something about this traitor,'" only for "[a]nother user to later attack[ ] and kill[ ] the victim." Mot. at 13. That scenario (it seems obvious to us) *does* involve the use, attempted use, or threatened use of physical force against the person of another, given that the hypothetical defendant seems to have called for others to use violence against the victim. *See Delligatti v. United States*, 604 U.S. 423, 432 (2025) ("[E]ven the indirect causation of bodily harm requires the use of violent force."); *United States v. Sanchez*, 940 F.3d 526, 535 (11th Cir. 2019) ("[T]he intentional causation of bodily injury or death, even by indirect means such as withholding medical treatment or food, necessarily involves the use of physical force.").

[5] Seetaram suggests that the Government's position poses the same problem the Western District of Virginia identified in *United States v. Plunkett*, 2024 WL 4173806 (W.D. Va. Sept. 12, 2024), which had "no difficulty envisioning situations that could satisfy all of the elements of interstate stalking but not necessarily involve the use, attempted use, or threatened use of physical force against the person *of another*." *Id.* at *7 (emphasis added). We disagree. Even if the stalker in Seetaram's hypotheticals is a close family member who threatens *self*-harm, to be guilty under §§ 2261A(2)(A) and 2261(b)(1), he must still, as we've explained, *proximately* kill the victim. We therefore see no *Plunkett* problem here.

7

Section 2261(b)(1) doesn't sweep within its ambit *every* death that follows a cyberstalking. The statute's ordinary meaning and statutory context confirm that, as with other similar criminal laws, "a proximate-cause requirement" is "built into [this] statute," even though Congress "did not expressly impose one." *Paroline*, 572 U.S. at 446 (citations omitted). We therefore find that even the "least culpable" conduct criminalized by §§ 2261A(2)(A) and 2261(b)(1) requires that a defendant use, attempt to use, or threaten to use physical force against the person of another.[6]

\* \* \*

After careful review, therefore, we **DENY** Seetaram's Motion to Dismiss [ECF No. 367].

**DONE AND ORDERED** in the Southern District of Florida on January 20, 2026.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record

---

[6] We recognize that the Fifth Circuit recently reached a contrary holding. *See United States v. Elkins*, 2025 WL 3537272 (5th Cir. Dec. 10, 2025). But that decision found it "only necessary to consider subsection (B) of § 2261A(2)" because of "the manner in which this case was submitted to the jury." *Id.* at *2. Plus, it didn't examine § 2261(b)(1) and so had no occasion to consider whether the *victim* language at issue here resolves *both* the problems posed by Seetaram's contrived hypotheticals (because someone who dies from indirect causes isn't a stalking *victim*) *and* the *mens rea* issue the Supreme Court identified in *United States v. Borden*, 593 U.S. 420, 429 (2021) (because anyone who proximately kills a person in a way that renders the deceased a "victim" necessarily does so knowingly and intentionally).

In any event, *Elkins* doesn't bind us, so we remain free to side with other courts on this issue. *See United States v. Griffin*, 2022 WL 2071054, at *6 (E.D. Mich. June 8, 2022) ("Ultimately, except for far-fetched hypotheticals involving the forbidden application of 'legal imagination,' the Court fails to see how an offender acting with the intent to kill, injure, or harass, can 'engage in conduct that places a person in reasonable fear of death or serious injury,' *and from which conduct death does indeed result*, without the use or threatened use of physical violence." (emphasis added)).